IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LML Investments, LLC,

   Plaintiff,

 v.

Catharine Liegey,

   Defendant.

Case No. 2:12-cv-723

Judge Graham

Magistrate Judge Abel

OPINION AND ORDER

This matter is before the court on defendant Catharine Liegey's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (doc. 23).

**I. Factual Background**

Plaintiff LML Investments, LLC brings this five-claim action. Each claim relates to defendant's use of the words "Country Girl" and "Country Brand." Plaintiff asserts that defendant's use of these words infringes and dilutes its trademarks in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., and Ohio law.

Plaintiff is an Ohio limited liability company with its principal place of business in Blacklick, Ohio. Plaintiff sells apparel and accessories "throughout the United States and the World." Doc. 1 ¶ 3. Some of the clothing and merchandise sold by plaintiff uses its federally registered trademarks, "Country Girl" and "Country Boy." Doc. 1 ¶ 4. Plaintiff operates the website "Countrygirlstore.com." Doc. 1 ¶ 17. Plaintiff also alleges that it owns a common law trademark in the name "Country Brands." Doc. 1 ¶ 32.

Defendant allegedly has marketed a line of women's lingerie using the names "Country Girl," "Authentic Country Girl," "Country Brand," and "Authentic Country Brand." Doc. 1 ¶ 6-11. The

marketing activities identified by plaintiff are all related to defendant's website, authenticcountrygirl.com. Doc. 1 ¶ 22. For example, plaintiff alleges that the website uses an "Authentic Country Girl" logo that is confusingly similar to its own logo, and a video that includes the written words "Authentic Country Girl." Doc. 1 ¶ 6. Plaintiff also claims that the website has a store locator function that "identified Ohio as one of the states with stores for the infringing products." Doc. 25 at 4. However, plaintiff has not alleged that defendant had a business relationship with any Ohio store or business or that the store locator identifies any such store. Plaintiff has submitted an image of the "store locator function" on the website that demonstrates that it is a list of the 50 United States under the heading "Find A Store." Doc. 25-3.

In October, 2011, defendant filed a trademark application for "Country Girl Lingerie." Doc. 1 ¶ 20. This application was rejected based upon plaintiff's prior registered trademark, "Country Girl." Doc. 1 ¶ 20. In February, 2012, defendant filed an international class 25 trademark application for "Authentic Country Girl." Doc. 1 ¶ 20.

Plaintiff's complaint includes a limited number of allegations regarding defendant's contacts with the state of Ohio. Many of these contacts arise from this litigation and from negotiation between the parties prior to plaintiff's instigation of this suit. Defendant resides in New York, New York. Doc. 1 ¶ 5. Plaintiff does not allege that defendant has ever visited Ohio, or that she has sold any products in this or any other state. Defendant confirms that she has only visited Ohio once, in 1995 on an unrelated matter, and that she has sold no products in Ohio. Doc. 23 at 2-3. When plaintiff's president, Lawrence M. Levine, contacted defendant to discuss the alleged infringement, defendant shipped to plaintiff in Ohio documents, artwork, a business plan, and samples. Doc. 1 ¶¶ 24, 27. The parties initially negotiated a potential licensing agreement, but those efforts were

2

abandoned. Doc. 1 ¶ 27. When the parties' initial negotiations ended, defendant demanded the return of the documents and samples that she had sent to plaintiff. Doc. 1 ¶ 27. Plaintiff refused to return the materials. Doc. 1 ¶ 28. Defendant subsequently filed a consumer complaint with the Central Ohio Better Business Bureau "claiming that [plaintiff] and Levine were harassing her, keeping her property for their own use and had made disparaging comments about women." Doc. 1 ¶ 28. The Better Business Bureau determined that the conflict was beyond its purview and closed the file in June, 2012. Doc. 1 ¶ 29.

## II. Standard of Review

When this Court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdiction." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (quoting Neogen Corp. V. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002)). "In this situation, [the Court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party." Id. (quoting Neogen, 282 F.3d at 887). "[A] defendant who alleges facts that would defeat the court's personal jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts. If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing." Serras v. First Tennessee Bank Nat. Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (citations omitted).

## III. Analysis

"Where a federal court's subject matter jurisdiction over a case stems from the existence of

a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process.'" Bird, 289 F.3d at 871 (quoting Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992)). The Ohio long-arm statute and the Due Process Clause present different standards, and both must be satisfied for this Court to assert personal jurisdiction. See Bird, 289 F.3d at 871.

Due Process

The Due Process Clause of the Fifth Amendment prevents the assertion of jurisdiction over individuals without "certain minimum contacts with [the jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. State of Wash., Office of Unempl't Compensation and Placement, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The due process requirements of personal jurisdiction may be met either through general or specific jurisdiction.

"General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" Bird, 289 at 873 (quoting Third Natl. Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989)). Here, the majority of the contacts between defendant and the state of Ohio are episodic and related to this litigation. The only continuous contact that plaintiff has had with the jurisdiction is through publication of her website, which is available in all United States jurisdictions. The maintenance of a website accessible in a jurisdiction is insufficient to establish general jurisdiction over a party. Bird, 289 F.3d at 873. This is most plainly the case where, as here, the website is not

interactive and does not seek business in the jurisdiction. Defendant does not use the website as a portal to conduct business, rather to market and publicize her products. Plaintiff has directed the court to nothing on the site that would support a finding that it maintains continuous contact with Ohio.

Specific jurisdiction, on the other hand, does not require continuous contact with a forum state, but allows the Court to assert personal jurisdiction over a party when contacts with the forum are specifically related to the facts of the case and are sufficiently substantial to allow jurisdiction without offending notions of "fair play and substantial justice." The Sixth Circuit Court of Appeals has established a three-part test for determining whether the Court has specific jurisdiction over a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.
> S. Mach. Co. V. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

Plaintiff argues that defendant has purposefully availed herself of the jurisdiction of courts in Ohio by operating her website, sending samples and other materials to the plaintiff in Ohio, negotiating a potential licensing arrangement with the plaintiff, filing a complaint with the Central Ohio Better Business Bureau, and causing tortious injury in Ohio.

As an initial matter, defendant's website, alone, is insufficient to constitute purposeful availment. "The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" Bird, 289 F.3d at 874 (quoting Neogen,

5

282 F.3d at 890). As discussed above, defendant's website was essentially non-interactive. Plaintiff only identifies one aspect of the website that suggests any intent to interact with residents of Ohio, that the "store locator" function included Ohio in a list of all 50 states in which visitors to the site could search for stores. Plaintiff does not claim that the store locator actually identified any stores in Ohio, or that defendant had any relationship with or plans to provide products to any store or business in Ohio. Defendant's passive website does not constitute contact with the forum state of Ohio.[1]

Next, plaintiff argues that defendant intentionally caused tortious injury in the State of Ohio by violating plaintiff's trademark. In some cases, intentional tortious injury may satisfy the demands of specific personal jurisdiction. However, the defendant must have taken a purposeful action with the intent of causing injury that is focused in the forum jurisdiction. For example, in Calder v. Jones, the United States Supreme Court held that personal jurisdiction was satisfied where Florida resident defendants, with no other connection to the forum state of California, had published an allegedly defamatory article about plaintiff, actress Shirley Jones. 465 U.S. 784, 785-86 (1984). "The article was drawn from California sources, and the brunt of the harm . . . and the injury to [plaintiff's] professional reputation, was suffered in California. In Sum, California is the focal point both of the story and of the harm suffered." Id. at 788-89. This case is distinguishable from Calder. Here, there is no particular focus on Ohio other than the fact that plaintiff's business is based in the state. Plaintiff's complaint does not suggest that its reputation is focused on Ohio. See Doc. 1 ¶ 3 ("LML sells, directly and through exclusive licenses, its apparel and accessories to the public throughout the

---

[1] Even if defendant's website allowed for sales to Ohio residents, which it does not, it still might not constitute purposeful availment. See Rothschild Berry Farm v. Serendipity Group LLC, 84 F.Supp.2d 904, 910 (S.D. Ohio 1999) ("[T]he existence of a web site which customers in the forum state can utilize to order products, alone, is not sufficient to justify the exercise of personal jurisdiction.").

United States and the world.) The mere presence of the allegedly injured party in a jurisdiction is insufficient to create a contact between the defendant and the forum state where that harm is not specifically targeted at and felt in the state. See Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1120 (6th Cir. 1994).

Though neither defendant's website nor the tortious injury she allegedly caused constitute contacts that support a finding of purposeful availment of the privilege of acting in the forum state, other actions alleged by plaintiff are more substantial. Plaintiff claims that defendant agreed to and did send samples and other materials to the plaintiff in Ohio, that the parties engaged in negotiations regarding a possible license deal, and that defendant filed a claim against the plaintiff with the Central Ohio Better Business Bureau. Each of these actions constitutes the type of affirmative action to make contact with the forum state that could support specific personal jurisdiction. However, the plaintiff must also satisfy the second prong of the Southern Machinery test: The plaintiff's cause of action must *arise from* defendant's contacts with the forum state. It does not. Each of these more substantial contacts between the defendant and the forum state occurred *after* the alleged infringement. When plaintiff's president discovered the alleged infringement, he contacted the defendant, asked for samples, and engaged her in negotiations. The Better Business Bureau claim resulted directly from the failure of these negotiations. Plaintiff's causes of action, all of which rest on the alleged infringement of plaintiff's trademark, existed before any of these contacts. *Southern Machinery* requires the cause of action to arise from the defendant's contacts with the forum state. Here, it is the contacts that arise from the cause of action. To exercise specific jurisdiction over defendant would allow personal jurisdiction over any defendant in any forum where they sought to negotiate a resolution to the disagreement before the suit was filed. Such a result does not comport

with notions of fair play and substantial justice.

Because defendant has very few contacts with the forum state, and those contacts that she has arose from the parties' negotiations prior to the filing of this case, the third Southern Machinery factor is also not met: The defendant's contacts with the forum state are not substantial enough to make the exercise of personal jurisdiction reasonable.

Given that plaintiff has not presented a prima facie case for either general or specific jurisdiction, it would violate due process to exercise personal jurisdiction over the defendant. Having determined that due process will not allow the Court to exercise personal jurisdiction over defendant in this case, it is unnecessary to examine the bounds of the Ohio long arm statute.

Transfer

Plaintiff argues that "[e]ven if this court determines that Liegey lacks sufficient contact with Ohio to warrant the assertion of jurisdiction over her by this court, the appropriate remedy is not dismissal of the action. Rather, this district has concluded that transfer of the case pursuant to 28 U.S.C. § 1406(a) is the appropriate remedy." Doc. 25 at 11.  Though plaintiff cites a single non-binding case to the contrary, a court that lacks personal jurisdiction over a defendant does not have the power to transfer the case to another court.  "The validity of an order of a federal court depends on that court's having jurisdiction over both the subject matter and the parties." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982).  Here, defendant has a personal liberty interest, protected by the Due Process Clause, in avoiding the judicial power of a jurisdiction with which she has little contact.  Given this due process right, neither a final judgment, nor an order transferring venue could validly bind defendant.

Nonetheless, defendant appears to concede that the Court has the discretion to transfer this

case pursuant to 28 U.S.C. § 1406(a).  Doc. 26 at 10.  Yet, as discussed above, this Court lacks the power to transfer venue absent personal jurisdiction over defendant, and neither 28 U.S.C. § 1406(a) nor defendant's apparent concession grant the Court that power.  Section 1406(a) allows the Court to cure defects in venue when it has proper jurisdiction.  It does not expand this Court's jurisdiction.

### IV.     Conclusion

Based on the foregoing reasons, the defendant's motion to dismiss (doc. 23) is GRANTED.

IT IS SO ORDERED.

S/ James L  Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Date: December 4, 2012